UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

                                            1:22-cr-00319-RCL

v.

COLTON WARGO.
       Defendant.

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Pursuant to Section 6A1.2 of the *Federal Sentencing Guidelines* the defendant, COLTON WARGO, comes now and submits the following:

**I.    Objections to Presentence Report**

The defendant does not object to any fact or factor which would impact the calculation of the appropriate advisory federal sentencing guideline. Further, the defendant does not object to any of the factual assertions in the report.

**II.    Sentencing Factors**

A sentencing court is required to consider the guidelines ranges, *see* 18 U.S.C.A 3553(a)(4)(Supp. 2004), but is permitted to tailor the sentence in light of other statutory concerns as well. Specifically, 18 USC 3553(a) notes:

> The court shall impose a sentence **sufficient, but not greater than necessary,** to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>     (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>     (2)    the need for the sentence imposed—
>         (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>         (B)    to afford adequate deterrence to criminal conduct;
>         (C)    to protect the public from further crimes of the defendant; and
>         (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

> (3)     the kinds of sentences available;
> (4)     the kinds of sentence and the sentencing range established for—
>> (A)     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
>> (B)     in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;
> (5)     any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
> (6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7)     the need to provide restitution to any victims of the offense.

The Supreme Court has described the process for imposing a sentence under the advisory sentencing guidelines as follows:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance…[A] major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States,* 128 S.Ct. 586, 596-97 (2007)(citations and footnote omitted; *see also Kimbrough v. United States*, 128 S.Ct. 558, 569-70 (2007).

A. **Advisory Sentencing Guidelines**

As noted in the presentence report the federal advisory guidelines do not apply to the single count of conviction. The statutory maximum period of incarceration is six months.

B. **§ 3553(a) Sentencing Factors**

In addition to considering the advisory sentencing range recommended under the federal sentencing guidelines, and statutory restrictions this Honorable Court must also consider the sentencing factors set forth in § 3553(a). The defendant submits an application of these factors to the case at bar leads to the conclusion that a probationary sentence would be sufficient and not greater than necessary.

1. **History and Characteristics of The Defendant**

The presentence investigative report summarizes Mr. Wargo's background. Although the guidelines do not apply to his offense of conviction, an application of the guidelines to his criminal history would produce a category I. He has no prior convictions. His criminal history is devoid of any arrests for weapons, firearms, or crimes of violence.

After graduating from high school Mr. Wargo entered the military. He served his country in the United States Marine Corp. Currently, Mr. Wargo is gainfully employed. During the pendency of this matter Mr. Wargo has been on pretrial supervision. There are no reports of Mr. Wargo failing to comply with any of his conditions. His income satisfactorily meets his needs but does not provide sufficient means to address any potential fine to be imposed in this matter.

In summary, Mr. Gleffe a 27-year-old male with no criminal history. He does not have a debilitating substance abuse problem. His mental health history also should not give this

Honorable Court any great concern. His family life and job stability are further support for the conclusion that an any period of incarceration is unwarranted.

## 2. Nature of the Offense

Mr. Wargo acknowledges the nature of the offense. He entered a plea of guilty and embraced the statement of offense filed in conjunction with his plea agreement with the government. The events of January 6, 2021, were disturbing to our nation. Mr. Wargo understands that he unfortunately played a role in the events.

Mr. Wargo, like millions of Americans, became convinced that the results of the 2020 presidential elections were the results of fraud. This belief was fueled by Congressional leaders and the President of the United States. Mr. Wargo's original intent was to simply attend the demonstration at the United States Capitol. It was not to participate in a violent attack on the Capitol. Unlike others, Mr. Wargo was unarmed. He was not a part of any organized pre-planning to attack the Capitol. In the company of his mother Mr. Wargo entered the Capitol without the use of force and simply walked around the building. There is no allegations that he destroyed any property while inside the building.

On January 6, 2021 Mr. Wargo, along with nearly 40,000 other participants, at the direction of President Donald J. Trump went to the Capitol. This Honorable Court is all too familiar with what would soon follow. It is noteworthy that Mr. Wargo did not participate in the physical breach of the Capitol. He entered the Capitol after others had caused the breach. Once in the Capitol Mr. Gleffe is not charged with assaulting anyone.

### 3. Need to Deter

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." Id. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. See David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); see also Gabbay, supra, at 448-49 ("[T]here

is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

Since his arrest Mr. Wargo has been on pretrial supervision. He remains under restrictions imposed by this Court. During that time he has not been subject to any new arrest. He has complied with all substance abuse testing. The restraints on his liberty has been consequential. It provides more than adequate specific deterrence for Mr. Wargo. Most significantly he will forever be reminded of his role in one of the darkest days in our country's history. It is something that he will be confronted with for the rest of his life.

### C.  Recommended Sentence

Mr. Wargo submits a sentence of probation would satisfy the legitimate goals of sentencing. Such a sentence followed by a period of supervised release would be consistent with other sentence imposed in those convicted of criminal violations arising out of the January 6 events at the Capitol.

### III.  Conclusion

Wherefore the defendant, **COLTON WARGO**, respectfully requests that this Honorable Court sentence to a period of probation.

I ASK FOR THIS:

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law

1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant COLTON WARGO

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on June 8, 2023.

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant COLTON WARGO